UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Phillip Kaplan,<br><br>          Plaintiff,<br><br>v.<br><br>State of California, et al.; City of San Diego CA, et al.; San Diego Police Department; et al.,<br><br>          Defendants. | Case No.: 17-cv-1336-AJB-KSC<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**<br>**(Doc. No. 34)** |

After having his van impounded for failing to register it in accordance with California's vehicle code, Kaplan brought this lawsuit against the impounding officers, the San Diego Police Department (SDPD), and the City of San Diego. However, because the officers enjoy qualified immunity, and because Kaplan fails to state a claim for constitutional violations against the SDPD or the City, the Court **GRANTS** defendants' dismissal motion. (Doc. No. 34.) Finding any amendment to Kaplan's lawsuit to be futile, the Court **DISMISSES** his complaint with prejudice.

## I. BACKGROUND

Kaplan's SAC, which is similarly styled to his first two complaints in its use of boilerplate language, alleges claims arising under 42 U.S.C § 1983 and violations of his Fourth, Fifth, and Fourteenth Amendment rights. (Doc. No. 33 at 2.) Defendants distill

Kaplan's SAC down to eight claims, with which the Court agrees. (Doc. No. 34 at 2.) Those include claims against Officers Miller, Dunagan, and Lowry under: (1) the Fourteenth Amendment, (Doc. No. 33 at 35–36); (2) under the Fourth Amendment for an unlawful search and seizure, (*Id.* at 36–38); (3) under the Fifth and Fourteenth Amendment's substantive due process clause, (*Id.* at 38–39); (4) a claim for intentional infliction of emotional distress, (*Id.* at 39–42); (5) a claim for abuse of process, (*Id.* at 42); (6) a claim against the City of San Diego for failure to train, (*Id.* at 43); (7) unconstitutional custom or policy, (*Id.* at 44–45); and (8) declaratory relief, (*Id.* at 45–47).

The basis for Kaplan's claim was defendants' seizure of Kaplan's van in 2016, which he lives in. (*Id.* at 5.) Kaplan alleges he was in California for 45 days when the officers stopped him because he did not have a license plate on his van. (*Id.* at 6.) When Kaplan asked if the officers wanted to check for weapons, the officers searched Kaplan. (*Id.*) They then asked for the van's registration, however, Kaplan did not have any because he had been traveling throughout the country and did not register or title his van in California. (*Id.*) The officers then impounded the van. (*Id.* at 7.)

## II. LEGAL STANDARDS

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a plaintiff's complaint. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "[A] court may dismiss a complaint as a matter of law for (1) lack of cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *SmileCare Dental Grp. v. Delta Dental Plan of Cal.*, 88 F.3d 780, 783 (9th Cir. 1996) (citation omitted). However, a complaint will survive a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In making this determination, a court reviews the contents of the complaint, accepting all factual allegations as true and drawing all reasonable inferences in favor of the nonmoving party. *See Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007). Notwithstanding this deference, a reviewing court need not accept legal conclusions as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is also improper for

a court to assume "the [plaintiff] can prove facts that [he or she] has not alleged." *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 664.

Pro se pleadings are held to "less stringent standards than formal pleadings drafted by lawyers" because pro se litigants are more prone to making errors in pleading than litigants represented by counsel. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (internal quotations omitted). Thus, the Supreme Court has stated that federal courts should liberally construe the "'inartful pleading' of pro se litigants." *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987) (quoting *Boag v. MacDougall*, 454 U.S. 364, 365 (1982)). Nonetheless, Federal Rule of Civil Procedure 8(a) requires that a complaint contain a short plain statement of "the claim showing that the pleader is entitled to relief[.]" Even if some claims may not—on their face—be subject to dismissal under Rule 12(b), a court still has discretion to dismiss those that fail to comply with the requirement that they be simple, concise, and direct. *McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996) (citing Fed. R. Civ. P. 8(e)).

### III. DISCUSSION

Defendants again argue that Kaplan's SAC should be dismissed for four reasons: (1) Kaplan's collateral attack is improper and he failed to exhaust his administrative remedies; (2) Kaplan's complaint—despite amendment—falls short of Federal Rule of Civil Procedure 8 standards; (3) Kaplan fails to state any claim for relief; and (4) the officers are entitled to qualified immunity.

**A. Officers Miller, Dunagan, and Lowry are Entitled to Qualified Immunity**

For brevity's sake, the Court begins its analysis with qualified immunity. "In determining whether an officer is entitled to qualified immunity, we consider (1) whether there has been a violation of a constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct." *C.V. by & through Willegas v. City of Anaheim*, 823 F.3d 1252, 1255 (9th Cir. 2016) (quoting *Lal v. California*, 746 F.3d

1112, 1116 (9th Cir. 2014)). The Supreme Court has often stressed the importance of deciding qualified immunity "at the earliest possible stage in litigation" in order to preserve the doctrine's status as a true "immunity from suit rather than a mere defense to liability." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). Additionally, "courts are now empowered to address the two prongs in whichever order would expedite resolution of the case." *Morales v. Fry*, 873 F.3d 817, 822 (9th Cir. 2017).

Without getting into the merits of Kaplan's constitutional claims, even assuming he can state a claim, Kaplan cannot overcome qualified immunity because he cannot show the officers violated a clearly established right. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Quiroz v. Short*, 85 F. Supp. 3d 1092, 1107 (N.D. Cal. 2015). Here, Kaplan does not—and cannot—show that the officers' actions violated a clearly established right. The officers approached Kaplan and inquired about his registration status. When he informed them his van was indeed unregistered, the officers impounded the van pursuant to California Vehicle Code § 22651(o)(1)(A). Impounding his van in this manner does not violate a clearly established right, and neither does being reasonably questioned by law enforcement officers. Moreover, Defendants state that even if Kaplan's arguments that the Vehicle Code does not apply to him because he was merely a guest in California were valid, it would not have been clearly established at the time of the officers' actions, and thus qualified immunity would still attach. (Doc. No. 34-1 at 17.)

Thus, the Court finds that the officers are entitled to qualified immunity against Kaplan's claims and **DISMISSES WITH PREJUDICE** all claims against officers Miller, Dunagan, and Lowry.

### B. Kaplan's IIED and Abuse of Process Claims

Defendants argue that Kaplan's IIED and abuse of process claims should be dismissed because Kaplan failed to allege compliance with the California Government Claims Act (CGA). California Government Code § 915(a) sets forth the procedure for

claims presentation to a local public entity, which includes Defendants the City of San Diego and the San Diego Police Department. The section provides:

> a) A claim, any amendment thereto, or an application to the public entity for leave to present a late claim shall be presented to a local public entity by either of the following means:
> (1) Delivering it to the clerk, secretary or auditor thereof.
> (2) Mailing it to the clerk, secretary, auditor, or to the governing body at its principal office.

West's Ann. Cal. Gov. Code § 915 (2014). After the public entity rejects the claim, a plaintiff has six months to file a lawsuit before it becomes barred as a matter of law. Cal. Civ. Proc. Code §§ 342, 945.6(a).

While Kaplan failed to allege compliance with the GCA in his SAC, he did file a supplemental document alleging "he filed a timely claim complying with the required Government Claims Act to the Defendants and 'complied with applicable claims statutes' within the time limitation." (Doc. No. 37 at 2.) However, these conclusory allegations fail to establish when he presented the claim to any public entity, which entities he submitted claims to, and when the entities rejected such claims allowing this lawsuit to be timely.

Moreover, Kaplan fails to allege any facts establishing an abuse of process claim. Under California law, a plaintiff brining an abuse of process claim must show the defendant "(1) contemplated an ulterior motive in using the judicial process, and (2) committed 'a willful act in the use of th[at] process not proper in the regular conduct of the proceedings.'" *Estate of Tucker ex rel. Tucker v. Interscope Records, Inc.*, 515 F.3d 1019, 1037 (9th Cir. 2008) (quoting *Oren Royal Oaks Venture v. Greenberg, Bernhard, Wiess & Karma, Inc.*, 42 Cal. 3d 1157, 1159 (1986)). An abuse of process claim "requires misuse of a judicial process." *Estate of Tucker*, 515 F.3d at 1037 (quoting *Stolz v. Wong Comm'cs Ltd. P'ship*, 25 Cal. App. 4th 1811, 1822 (1994)). As Defendants note, Kaplan has not shown any facts that the officers impounded his van as a part of a litigation tactic or otherwise abused any judicial process. Thus, that claim is **DISMISSED WITH PREJUDICE**.

Finally, turning to the merits of Kaplan's IIED claim, Kaplan fails to allege facts

showing the officers engaged in "extreme and outrageous conduct . . . with the intention of causing . . . emotional distress." *Christensen v. Sup. Court*, 54 Cal. 3d 868, 903 (Cal. 1991) (internal quotation marks and citations omitted). The conduct "must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id.* Approaching Kaplan and impounding his van because he failed to produce valid registration does not near exceeding the bounds of tolerated conduct in a civilized society. Thus, the Court also **DISMISSES WITH PREJUDICE** this claim.

### C. Kaplan's Failure to Train and Custom/Policy Claims Against the City Fail

First, Kaplan alleges the City failed to "instruct the officers on policy regarding the 'summary tax seizure' of section *CVC 22651(o)(1)(A)* and the applicability of the section." (Doc. No. 33 at 43 (italics in original).) Kaplan continues, "[t]he municipality failed to instruct the officers of the applicability of section 22651(o)(1)(a) in that it does not apply to out of state, nonresidents, or the officer knew or should have known, or was indifferent to the misapplication of the code." (*Id.*) However, Kaplan is incorrect that California's vehicle code does not apply to out of state residents. The Court previously held that "Plaintiff is subject to local authority—including the vehicle code. . . ." (Doc. No. 28 at 6.) The Vehicle Code itself only states that officers "may remove a vehicle located within the territorial limits in which the officer or employee may act, under the following circumstances," but includes no residency requirement. Thus, any argument that the City failed to train officers predicated on this assertion must fail. Accordingly, the Court **DISMISSES WITH PREJUDICE** Kaplan's failure to train claim against the City.

Next, Kaplan alleges the City and the San Diego Police Department has a custom or policy of "harass[ing] homeless persons including but not limited to the homeless class living in their vehicles." (Doc. No. 33 at 44.) Kaplan points to an article referencing another case before this Court regarding homeless persons living in their recreational vehicles. (*Id.*) Kaplan alleges Defendants have a "police policy to harass persons living in their vehicles" which "goes to a pattern of harassment by the City of San Diego." (*Id.* at 45.) However,

here, Kaplan only pleads a single incident—his own. "A plaintiff cannot prove the existence of a municipal policy or custom based solely on the occurrence of a single incident of unconstitutional action by a non-policymaking employee." *Davis v. City of Ellensburg*, 869 F.2d 1230, 1233 (9th Cir. 1989); *see City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985) (plurality opinion). Moreover, as noted by Defendants, the rest of Kaplan's allegations are conclusory and fail to state a claim. (Doc. No. 34-1 at 21.) For example, Kaplan alleges "[t]he seizure of vehicle without registration is a common practice that is so widespread and well settled as to constitute a custom or usage with the force of law even though it is not authorized by written law or express policy." (Doc. No. 33 at 45.) While the Court must liberally construe pro se pleadings such as Kaplan's FAC, the Court does not have to take legal conclusions as true. *Iqbal*, 556 U.S. at 678. Accordingly, the Court **DIMISSES WITH PREJUDICE** Kaplan's custom or policy claim against the City and SDPD.

## IV. LEAVE TO AMEND

The Court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). However, under Ninth Circuit case law, district courts are only required to grant leave to amend if a complaint can possibly be saved. Courts are not required to grant leave to amend if a complaint lacks merit entirely." *Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000). Here, Kaplan has filed three complaints and was already given an opportunity to amend. (Doc. Nos. 1, 4, 33.) However, the Court finds any further amendment would be futile as Kaplan's core set of facts simply fails to state a federal claim. Accordingly, the Court **DECLINES** granting leave to amend.

## V. CONCLUSION

The Court finds the dismissal of Officers Millar, Dunagan, and Lowry is necessary because they are entitled to qualified immunity for their interactions with Kaplan in engaging with him, searching his van, and impounding it. The Court also dismisses the IIED and abuse of process claims because Kaplan's FAC fails to state a claim for relief for both. Finally, Kaplan cannot allege a failure to train argument or an unlawful custom or

policy claim against the City of San Diego or the San Diego Police Department. Accordingly, the Court **GRANTS** Defendants' motion to dismiss in its entirety. (Doc. No. 34.) Plaintiff's SAC is **DISMISSED WITH PREJUDICE**. The Court Clerk is instructed to close the case.

**IT IS SO ORDERED**.

Dated: January 25, 2019

Hon. Anthony J. Battaglia
United States District Judge